UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**       'O'

| Case No. | 2:13-cv-04537-CAS(MRWx) | Date | August 11, 2014 |
|---|---|---|---|
| Title | MIRIAM BENZICRON V. JULIAN LEDESMA ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: | |
| Richard Weiner | John Du Wors | |

**Proceedings:**     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (dkt. 35, filed July 11, 2014)

## I.    INTRODUCTION

On June 21, 2013, plaintiff Miriam Benzicron filed a complaint against defendants Julian Ledesma, Shamina Alikhani, and The Sweat Shop Group, LLC. Plaintiff asserts claims for (1) trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114, (2) common law trademark infringement, and (3) unfair trade practices, in violation of California Bus. & Prof. Code § 17200, et seq. On August 30, 2013, defendants answered, and asserted counterclaims for (1) cancellation of trademark pursuant to 15 U.S.C. § 1064 and (2) declaratory relief of non-infringement. Dkt. 13.

On July 11, 2014, defendants moved for summary judgment.[1] Dkt. 35. On July 20, 2014, plaintiff opposed defendants' motion, dkt. 39, and on July 28, 2014, defendants replied, dkt. 56. After considering the parties' arguments, the Court finds and concludes as follows.

---

[1] The Court's consideration of this motion is hampered by defendants' failure to lodge a statement of undisputed facts accompanying their motion for summary judgment, as required by Local Rule 56-1. Defendants only filed their statement of undisputed fact after this omission was pointed out in plaintiff's opposition, dkt. 50, thus obligating plaintiff to prepare and submit a revised statement of genuine disputes, dkt. 52. Defendants are admonished that the Court expects strict compliance with the Local Rules, and that future failures to follow the rules may result in the imposition of sanctions, including the summary granting or denial of motions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                    'O'

| Case No. | 2:13-cv-04537-CAS(MRWx) | Date | August 11, 2014 |
|---|---|---|---|
| Title | MIRIAM BENZICRON V. JULIAN LEDESMA ET AL. | | |

## II.     BACKGROUND

Plaintiff Miriam Benzicron states that she owns and operates "The Sweat Shoppe," an indoor cycling studio located in North Hollywood, California. Benzicron Decl. ¶ 2. Benzicron conceived of the name "The Sweat Shoppe" in early 2010, and she filed a fictitious business name statement with the County of Los Angeles on May 5, 2010. Id. ¶¶ 4-5. Benzicron explains that she settled on the name "The Sweat Shoppe" because she thought the double entendre with "sweatshop" would be catchy and controversial. Id. ¶ 4. After coming up with the name, Benzicron contracted with Matteo Perra, a graphic designer, to design a logo for her cycling studio. Id. ¶ 6. In March 2011, Perra sent Benzicron several options, and Benzicron chose a design consisting of the name "The Sweat Shoppe," located within a circle, and with the letter "A" in "Sweat" stylized with a water droplet. Plaintiff's logo is depicted below:



Id. Ex. 3. Benzicron then launched her cycling studio on March 21, 2011. Id. ¶ 7. The studio is located at 11049 Magnolia Boulevard, No. 50, North Hollywood, California 91601. Id. ¶ 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-04537-CAS(MRWx) | Date | August 11, 2014 |
| Title | MIRIAM BENZICRON V. JULIAN LEDESMA ET AL. | | |

On May 16, 2011, Benzicron submitted a trademark registration application for her logo to the United States Patent and Trademark Office ("USPTO"). Id. ¶ 9. On January 17, 2012, the USPTO issued Benzicron Trademark Registration Number 4,087,030. Id. ¶ 9 & Ex. 6. This registration states that plaintiff's logo was first used in commerce on March 21, 2011, and that the mark "consists of the stylized text 'The Sweat Shoppe' inside a circle design with the letter 'A' stylized with a design of a water drop inside." Id. ex 9. The registration further states that "no claim is made to the exclusive right to use 'Shoppe', apart from the mark as shown." Id. Benzicron states that, after receiving the trademark registration, she expended considerable funds marketing The Sweat Shoppe using her logo. Id. ¶ 11. The Sweat Shoppe sells merchandise depicting plaintiff's logo. Id. ¶ 13.

Defendant Julian Ledesma states that he owns defendant The Sweat Shop Group, LLC, along with his co-defendant Shamina Alikhani. Ledesma Decl. ¶ 2. Ledesma operates a business known as "The Sweat Shop L.A.," a "holistic detox day spa" located on North Cahuenga Boulevard in Los Angeles, California. Id. ¶¶ 3, 5. Ledesma explains that The Seat Shop L.A. offers Infrared Sauna Therapy, but does not offer exercise or spin cycle classes. Id. ¶¶ 6-8. The Sweat Shop L.A. operates under a logo featuring a gray circle with a prominent white droplet and distinctive font. Id. ¶ 9. Defendants' logo is depicted below:



Mot. 3. Ledesma further states that in 2012, he contacted the USPTO and sought to register the name "Sweat Shop." Ledesma Decl. ¶ 10. Ledesma avers that the USPTO informed him that the name "Sweat Shop" would not be distinctive without a geographic designator like "L.A." Id. ¶ 11. Ledesma applied for word-mark protection for the name "The Sweat Shop L.A." on December 20, 2012. Id. ¶ 12. Ledesma states that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**    'O'

| Case No. | 2:13-cv-04537-CAS(MRWx) | Date | August 11, 2014 |
|---|---|---|---|
| Title | MIRIAM BENZICRON V. JULIAN LEDESMA ET AL. | | |

USPTO initially approved his application, but then stayed the application after Benzicron filed this action. Id. ¶¶ 13-14.

Benzicron states that in October 2012, she began to receive phone calls asking for information about sauna and injection treatments, which plaintiff's business does not offer. Benzicron Decl. ¶ 13. Because these callers frequently inquired if Benzicron operated "The Sweat Shop" located on Cahuenga Boulevard, plaintiff conducted an internet search, and discovered defendants' business, including its use of defendants' logo. Id. Plaintiff states that defendants' business is located 6.4 miles from her business. Id. ¶ 20. On October 22, 2012, plaintiff mailed a cease and desist letter to defendants, informing defendants of her registered trademark. Id. ¶ 14 & Ex. 12. Defendants did not stop using the name "The Sweat Shop," and did not respond to further cease and desist letters, leading plaintiff to retain counsel and commence this action. Id. ¶¶ 15-17.

### III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d

Case 2:13-cv-04537-CAS-MRW   Document 61   Filed 08/11/14   Page 5 of 12   Page ID #:716

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL             'O'

| Case No. | 2:13-cv-04537-CAS(MRWx) | Date | August 11, 2014 |
|---|---|---|---|
| Title | MIRIAM BENZICRON V. JULIAN LEDESMA ET AL. | | |

626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.   DISCUSSION

At the outset, the Court notes that plaintiff's complaint and opposition papers evince substantial ambiguity about plaintiff's theory of infringement. As noted above, plaintiff has registered a trademark, consisting of the name "The Sweat Shoppe" displayed within a circle, with the letter "A" stylized using a water droplet design. As alleged in the complaint, defendants infringed this trademark by "continuing to utilize, display, and identify themselves with the trademark 'The Sweat Shop' in a circle with a water drop." Compl. ¶¶ 30, 34; see also id. ¶ 16 ("Defendants['] . . . logo looks essentially the same as Plaintiff's logo."). Focusing on these allegations in the complaint, then, plaintiff's theory of infringement appears to be that defendants' logo infringes plaintiff's logo.

Elsewhere in the complaint, however, as well as in plaintiff's opposition, plaintiff appears to advance an alternative theory of infringement, turning not on defendants' logo, but instead on defendants' use of the name "The Sweat Shop." The complaint alleges, for example, that "defendants . . . seek to use Plaintiff's name and mark on a circular background." Id. ¶ 17 (emphasis added); see also opp. at 7 ("Defendants continued to infringe on Plaintiff's Registered name and mark by wrongfully using Plaintiff's name, unique mark, marketing, advertising and established name recognition and good will."). Plaintiff is thus unclear about the precise nature of defendants' allegedly infringing conduct. Plaintiff is similarly ambiguous about the source of her trademark rights. Plaintiff registered a design plus words mark containing the words "The Sweat Shoppe," not a word mark for the name "The Sweat Shoppe." Indeed, the name "The Sweat Shoppe" is probably more properly characterized as a trade name, rather than a trade mark, and is thus not eligible for registration under the Lanham Act. See Accuride Int'l, Inc. v. Accuride Corp., 871 F.2d 1531, 1534 (9th Cir. 1989) (explaining the difference between trademarks and trade names). Needless to say, plaintiff may also own unregistered rights in the name "The Sweat Shoppe." But these

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:13-cv-04537-CAS(MRWx) | Date | August 11, 2014 |
|---|---|---|---|
| Title | MIRIAM BENZICRON V. JULIAN LEDESMA ET AL. | | |

rights arise separately from, and have a different scope than, plaintiff's rights in her registered logo mark. See Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 59 F.3d 902, 908 (9th Cir. 1995) (explaining that "trade names and marks might require separate analyses").

In light of these ambiguities, and in the interest of resolving defendants' pending motion for summary judgment, the Court adopts a narrow construction of plaintiff's claims: that defendants' logo infringes the plaintiff's registered logo mark.[2] With these preliminaries in mind, the Court turns to the substance of defendants' motion.

The Lanham Act prohibits the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services [when] such use is likely to cause confusion, or to cause mistake . . . ." 15 U.S.C. § 1114. To prevail on her Lanham Act claims, plaintiff must prove that "(1) [she] has a protectible ownership interest in the mark; and (2) that the defendant[s'] use of the mark is likely to cause customer confusion." Department of Parks and Recreation for the State of California v. Bazaar del Mundo Inc., 448 F.3d 1118, 1124 (9th Cir. 2006). Plaintiff's claims for common law trademark infringement, and state law unfair competition are evaluated under the same standard. See M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1080 (9th Cir. 2005); Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("[S]tate common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act.").

### A. Protectible Ownership Interest in the Mark

"The Lanham Act grants trademark protection only to marks that are used to identify and to distinguish goods or services in commerce—which typically occurs when a mark is used in conjunction with the actual sale of goods or services." Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1051 (9th Cir.1999).

---

[2] At hearing, the Court directed the parties to engage in further mediation proceedings with the Hon. Michael R. Wilner. Should mediation fail, the parties shall notify the Court and plaintiff will have 30 days to amend her complaint to allege a claim for relief based upon defendants' alleged infringement of plaintiff's trade name.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:13-cv-04537-CAS(MRWx) | Date | August 11, 2014 |
|---|---|---|---|
| Title | MIRIAM BENZICRON V. JULIAN LEDESMA ET AL. | | |

"[O]wnership of a mark and the exclusive right to a mark belongs to the one who first uses the [m]ark on the goods placed on the market." Chance v. Pac–Tel Teletrac, Inc., 242 F.3d 1151, 1158 (9th Cir. 2001). To be protectible, a mark must be distinctive. Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d 1108, 1113 (9th Cir. 2010). "The general rule regarding distinctiveness is clear: An identifying mark is distinctive and capable of being protected if it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992). Marks are generally classified in one of five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful." Id. at 968. Suggestive, arbitrary, and fanciful marks are inherently distinctive, while descriptive marks must acquire distinctiveness through secondary meaning and generic marks can never be distinctive. Id. A plaintiff's registration of the mark entitles it to "a strong presumption of validity." KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc., 408 F.3d 596, 604 (9th Cir. 2005) (citing 15 U.S.C. § 1115(a)).

Here, plaintiff's logo is a registered mark, and the Court therefore presumes that it is valid.[3] Moreover, plaintiff states that she has used the mark in commerce since at least March 11, 2011, when she formally opened the "The "Sweat Shoppe." Benzicron Decl. ¶¶ 7, 9. Plaintiff supplemented this use in commerce by marketing her business and selling merchandise bearing plaintiff's logo. Benzicron Decl. ¶¶ 11-12. Between plaintiff's trademark registration, and her testimony as to use in commerce, the Court concludes that plaintiff has made out a prima facia case that she has a protectible ownership interest in plaintiff's logo.

Defendants resist this conclusion on three grounds. First, defendants contend that plaintiff's logo is generic. "Generic marks give the general name of the product; they embrace an entire class of products." Kendall–Jackson Winery, Ltd. v. E. & J. Gallo

---

[3] In this regard, the Court rejects defendants' contention that the USPTO has already found plaintiff's mark to be invalid. Defendants base this argument on defendant Ledesma's declaration that he contacted the USPTO in 2012 and was told that the name "The Sweat Shop" would not be distinctive without a geographical identifier. Ledesma Decl. ¶ 11. Even setting aside the potential evidentiary issues with this argument, Ledesma's declaration is of no probative value regarding the USPTO's view of the validity of plaintiff's mark, given that the USPTO granted plaintiff's application to register her logo.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-04537-CAS(MRWx) | Date | August 11, 2014 |
| Title | MIRIAM BENZICRON V. JULIAN LEDESMA ET AL. | | |

Winery, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998). "A mark answers the buyer's questions 'Who are you? Where do you come from?' 'Who vouches for you?' But the name of a product answers the question 'What are you?' " Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1391 (9th Cir. 1993) (quoting 1 J. McCarthy, Trademarks and Unfair Competition § 12.01 (3d ed. 1992)). "Generic marks are not capable of receiving protection because they identify the product, rather than the product's source." KP Permanent Make–Up, 408 F.3d at 602. Here, defendants contend that "The Sweat Shoppe" is generic because "it describes the services offered—a shop where you sweat—rather than identify a particular business." Mot. 9.

The Court finds this argument unpersuasive. For one, defendants' focus on the phrase "The Sweat Shoppe" runs afoul of the anti-dissection rule, which commands that marks are evaluated as a whole, rather than piece-by-piece. See California Cooler, Inc. v. Loretto Winery, Ltd., 774 F.2d 1451, 1455 (9th Cir. 1985) ("[T]he validity of a trademark is to be determined by viewing the trademark as a whole. . . . [T]he composite may become a distinguishing mark even though its components individually cannot."). Accordingly, the Court evaluates whether plaintiff's logo is generic by examining the mark as a whole, looking to both the text and the logo design. Here, plaintiff's logo is not generic because it doesn't "answer[] the question 'What are you?' " Official Airline Guides, Inc., 6 F.3d at 1391. The logo, on its face, does not demonstrate any connection to indoor cycling, exercise, or health services generally.

And even if the Court were to focus on the term "The Sweat Shoppe" in isolation, that term is not generic. Webster's Third New International Dictionary defines "sweatshop" as "a shop or factory in which employees work for long hours at low wages and under unhealthy conditions." Plaintiff is not operating, the Court hopes, that kind of sweatshop. Instead, as Benzicron explains in her declaration, the name "The Sweat Shoppe" is a double entendre, punning off the normal definition of sweatshop together with exercised-induced perspiration. As a double entendre, "The Sweat Shoppe," is, by definition, not generic because plaintiff is not using the term sweatshop in its ordinary sense.[4] Indeed, the implausibility of defendants' genericness argument is underscored by the fact that defendants' name makes precisely the same double entendre as plaintiff.

---

[4] Defendants contention that many other businesses across the country also use the name "The Sweat Shop" is similarly unavailing, as all of those business names are presumably based on the same pun that plaintiff and defendants use here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:13-cv-04537-CAS(MRWx) | Date | August 11, 2014 |
|---|---|---|---|
| Title | MIRIAM BENZICRON V. JULIAN LEDESMA ET AL. | | |

Next, defendants argue in the alternative that "The Sweat Shoppe" is descriptive. Descriptive marks, although more specific than generic marks, "define a particular characteristic of the product in a way that does not require any exercise of the imagination." Surfvivor Media, Inc. v. Survivor Productions, 406 F.3d 625, 632 (9th Cir.2005). "A descriptive mark can receive trademark protection if it has acquired distinctiveness by establishing "secondary meaning" in the marketplace." Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 927 (9th Cir. 2005). This argument fails for substantially the same reason as defendants' genericness argument, namely that plaintiff's logo does not, on its face, describe or characterize plaintiff's business. In determining whether a mark is descriptive, "[t]he inquiry is 'whether, when the mark is seen on the goods or services, it immediately conveys information about their nature.'" Lahoti v. VeriCheck, Inc., 586 F.3d 1190, 1201 (9th Cir. 2009) (quoting In re Patent & Trademark Servs. Inc, 49 U.S.P.Q.2d 1537, 1539 (T.T.A.B.1998)). Here, plaintiff's logo, again viewed as a whole, does not "immediately convey" information about the nature of plaintiff's services. The logo does not, for example, depict bicycles, or other exercise equipment. Instead, a viewer must use his or her imagination to appreciate the double entendre in the name, and the relevance of the water droplet design to that double entendre. This imaginative leap indicates that the mark is suggestive, rather than descriptive. Id. ("A mark is suggestive 'if 'imagination' or a 'mental leap' is required in order to reach a conclusion as to the nature of the product being referenced.'" (quoting Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc., 198 F.3d 1143, 1147 n.3 (9th Cir.1999))).

But even if the Court were to assume that plaintiff's logo was descriptive, rather than suggestive, a descriptive mark is protectible if it acquires distinctiveness through secondary meaning. 15 U.S.C. § 1052. "Secondary meaning is a question of fact." Japan Telecom, Inc. v. Japan Telecom Am. Inc., 287 F.3d 866, 873 (9th Cir. 2002). Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner and length of use . . . , amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." Filipino Yellow Pages, 198 F.3d at 1151. Here, plaintiff has introduced sufficient evidence of secondary meaning, including promotional materials and merchandising, to preclude summary judgment on secondary meaning. See Benzicron Decl. Exs 7-9; cf. Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1264 (9th Cir. 2001).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | 2:13-cv-04537-CAS(MRWx) | Date | August 11, 2014 |
|---|---|---|---|
| Title | MIRIAM BENZICRON V. JULIAN LEDESMA ET AL. | | |

Finally, defendants argue that plaintiff's registration should be canceled because plaintiff committed fraud on the USPTO. In particular, defendants argue that, although Benzicron represented to the USPTO that she began using the logo in 2011, in fact it was Benzicron's LLC, not Benzicron herself that used the logo. This argument fails because 15 U.S.C. § 1055 provides that "a registered mark or a mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration, and such use shall not affect the validity of such mark or of its registration." See also Secular Organizations for Sobriety, Inc. v. Ullrich, 213 F.3d 1125, 1131 (9th Cir. 2000) ("Under the doctrine of 'related companies,' the first use of a mark by a person 'controlled by the registrant or applicant for registration of the mark' shall inure to the benefit of the controlling entity."). Here, Benzicron's LLC was at all times under the control of Benzicron, and its use of plaintiff's logo thus inured to the benefit of Benzicron. Accordingly, Benzicron did not commit fraud on the USPTO.

### B.      Likelihood of Confusion

The Ninth Circuit applies the eight-factor Sleekcraft test to determine whether a likelihood of confusion exists. See AMF v. Sleekcraft Boats, 599 F.2d 341, 348 (9th Cir. 1979)). The factors are: (1) the strength of the plaintiff's mark; (2) the relatedness or proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the degree to which the parties' marketing channels converge; (6) the type of goods and degree of care purchasers are likely to exercise in selecting the goods; (7) evidence of the defendant's intent; and (8) the likelihood that the parties will expand their product lines. Id. The factors "should not be rigidly weighed," Dreamwerks Prod. Grp., Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir. 1998), but are instead "intended to guide the court in assessing the basic question of likelihood of confusion," E. & J. Gallo, 967 F.2d at 1290. The likelihood of confusion test considers whether "the similarity of the marks is likely to confuse customers about the source of the products." Id. In addition, close cases should be resolved in favor of the senior user of the mark. Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1404 n.14 (9th Cir. 1997).

"Given the open-ended nature of this multi-prong inquiry, it is not surprising that summary judgment on 'likelihood of confusion' grounds is generally disfavored." Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1210 (9th Cir. 2012) ("In other words, because the likelihood of confusion is often a fact-intensive inquiry, courts are generally reluctant to decide this issue at the summary judgment stage." (quotation and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:13-cv-04537-CAS(MRWx) | Date | August 11, 2014 |
|---|---|---|---|
| Title | MIRIAM BENZICRON V. JULIAN LEDESMA ET AL. | | |

alteration omitted)). Applying these principles here, the Court declines to depart from the general presumption that likelihood of confusion should not be decided on summary judgment. First and foremost, under the "similarity of the marks" Sleekcraft factor, there is substantial visual similarity between plaintiff's logo and defendants' logo. Both exhibit circular designs containing variations of the phrase "The Sweat Shoppe." Both use a water droplet motif, although in slightly different fashion—plaintiff's logo has a water droplet contained within the "A" in the word "Sweat", while defendants' logo uses a water droplet as a background. This substantial visual similarity is likely enough, standing alone, to create a genuine issue of material fact as to likelihood of confusion. See GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000) ("The first Sleekcraft factor—the similarity of the marks—has always been considered a critical question in the likelihood-of-confusion analysis.").

In any event, there are also genuine issues of material fact as to several other Sleekcraft factors. Under the second Sleekcraft factor, "the relatedness or proximity of the goods," plaintiff's business is an indoor-cycling studio, whereas defendants' business is a day spa. These fields, while not identical, are both related to health and fitness, and there is thus a genuine issue of fact as to this factor. Cf. SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd., 2013 WL 4528539, at *14 (N.D. Cal. Aug. 23, 2013) (explaining that "use of identical marks [is] likely to cause confusion where plaintiff's and defendant's goods and services were related generally to the computer software industry, even though their 'lines of business' were 'not identical'" (citing Palantir Technologies Inc. v. Palantir.net, Inc., 2008 WL 152339, at *7 (N.D. Cal. Jan. 15, 2008))). Likewise, under the fifth Sleekcraft factor, "the degree to which the parties' marketing channels converge," both plaintiff and defendants appear to engage in substantial internet-based marketing. Compare Benzicron Decl. Ex. 8 (listing websites describing and marketing plaintiff's business); with id. Ex. 9 (internet search indicating that a query for the name of plaintiff's business returned links to defendants' business); and Ex. 11 (defendants' website). And finally, under the fourth Sleekcraft factor, "evidence of actual confusion," plaintiff supplies several declarations from employees of her business stating that customers have expressed confusion between plaintiff's and defendants' businesses. See Uwidia Decl. ¶ 3; Jarmon Decl. ¶¶ 3-4; see also Carlos Decl. ¶ 3 (declaration by customer of plaintiff that a friend was confused by plaintiff's and defendants' businesses).[5]

---

[5] Defendants object to these declarations as hearsay. This objection is OVERRULED because the statements at issue concern the present state of mind of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-04537-CAS(MRWx) | Date | August 11, 2014 |
| Title | MIRIAM BENZICRON V. JULIAN LEDESMA ET AL. | | |

      In response, defendants point to several other Sleekcraft factors that they contend weigh against likelihood of confusion. For instance, defendants contend that they were not aware of plaintiff's business when they selected their name and logo, and that the seventh Sleekcraft factor thus weighs against likelihood of confusion. But even taking this as true, defendants' argument merely underscores the many unresolved disputes permeating the issue of likelihood of confusion. In light of these disputes, the Court cannot grant summary judgment. See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1039 (9th Cir. 2010) ("Granting summary judgment in cases in which a majority of the Sleekcraft factors could tip in either direction is inconsistent with that principle.").

### V.    CONCLUSION

      In accordance with the foregoing, the Court hereby DENIES defendants' motion for summary judgment.

      IT IS SO ORDERED.

| | 00 | : | 19 |
|---|---|---|---|
| Initials of Preparer | | | CMJ |

---

declarant, namely their confusion about plaintiff's and defendants' businesses. See Fed. R. Evid 803(3). The more serious potential problem with these declarations is that the confusion at issue appears to arise out of the similarities between the parties' names, and not the similarity between the parties' logos. The declarations thus implicate the conceptual confusion discussed above regarding plaintiff's precise theory of infringement.